UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES TORRES, | : |
| Plaintiff, | : Civ. No. 17-7169 (KM) (CLW) |
| v. | : |
| COUNTY OF ESSEX et al., | : OPINION |
| Defendants. | : |

**KEVIN MCNULTY, U.S.D.J.**

## I.   INTRODUCTION

Plaintiff, Charles Torres, is imprisoned at Northern State Prison, in Newark, New Jersey. He is proceeding pro se with a civil rights complaint filed under 42 U.S.C. § 1983. This Court previously granted Mr. Torres leave to proceed *in forma pauperis*, but dismissed his complaint without prejudice upon an initial screening. (ECF No. 2–4.)

Mr. Torres has now submitted an amended complaint, which the Court must again screen, pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the complaint will be dismissed, in part with prejudice and in part without prejudice.

## II.   BACKGROUND

The allegations of the complaint will be construed as true for the purposes of this opinion. Mr. Torres's claims center around an incident on October 15, 2014, when he was in pretrial custody at the Essex County Correctional Facility, in Newark, New Jersey. (*See* Am. Compl.,

ECF No. 7.) Mr. Torres alleges that he slipped on a wet floor in a kitchen and that the resulting fall caused him to lose teeth.[1] (*Id.* ¶ 6.) Mr. Torres impleads as defendants Essex County and the Essex County Freeholders, whom he alleges "are responsible for the Essex Co. Jail as well as making sure that the jail is safe for the inmates that are confined there," and the Essex County Correctional Facility warden, Mr. A. Ortiz, and director, Mr. R. Hendricks, whom he alleges "are also held responsible . . . with keeping the facility safe for the inmates housed there." (*Id.*) Mr. Torres additionally seeks to implead the Essex County Jail Medical Department and various John/Jane Doe defendants, whom he alleges "failed to properly treat Plaintiff's injuries, as well as provide follow up care." *Id.* Finally, Mr. Torres includes as defendants "New Jersey Claim Services/Inservco Insurance Services" on the basis that they insured the Essex County Correctional Facility and "[t]o the best of Plaintiffs knowledge . . . failed to follow up on his claim after he was transferred to state prison." (*Id.*) Mr. Torres claims that both the medical

---

[1] In a declaration attached to his amended complaint, which seems originally to have accompanied an Essex County notice-of-claim form, Mr. Torres recounts the incident in greater detail. (*See* Am. Compl., Ex., ECF No. 7, ECF pp. 17–18.) He explains that, at the time of the incident, he was a kitchen worker in the "C-pod" kitchen, but that the fall occurred when he went into the "B-pod" kitchen to retrieve other food. (*Id.*) Specifically, he alleges,

> upon entering the kitchen soon as my shoes hit the wet surface I started to slip and slide[.] the shoes that we are given at the jail are called BoBo's[.] they have no grip what so ever on a wet surface "NONE AT ALL". The inmate had made aware to the housing officer before the accident happened that the Juice Jug was leaking and had turned into a puddle so they can mop up the hazardous area[.] he simply said he was not going to open the closet do[o]r right now .so as I walked into the kitchen like I normally do .. I slipped face first right into the stainsteel seam table hitting the top edge of the steam table with my mouth (face) Then bouncing off the steam table and came crashing toward the floor hitting he bottom of the steam[.] I tried to get up and I slipped again hitting the floor Again face first, causing me to get a laceration on the upper side of my lip loosening (4) four of my front teeth causing a very noticeable swollen face.

(*Id.*)

2

department defendants and the insurance defendants were deliberately indifferent to his medical and dental needs. (*Id.* ¶ 6.) The amended complaint caption also lists as defendants "Officers Howel and Piontek, et al.," but the remainder of the amended complaint contains no references to them.[2] (*See* ECF No. 7.)

Mr. Torres demands compensatory damages of $100,000, punitive damages of $120,000, and the installation of receive dental implants. (*Id.* ¶ 7.) Mr. Torres includes with his amended complaint a notice of claim he apparently filed with Essex County on February 27, 2015, as well as undated letters directed to some of the defendants complaining of the underlying incident. (*See* Am. Compl., Exs., ECF No. 7 at pp. 7–22.)

### III. LEGAL STANDARDS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged

---

[2] The notice of claim attached as an exhibit to the complaint lists Officer Piontek as a witness to Mr. Torres's fall. (ECF No. 7 at ECF p. 12.) A declaration by Mr. Torres, also included as an exhibit, recounts that Officer Howel had opened the door for Mr. Torres to enter the kitchen where he fell and that, when Officer Piontek noticed the incident, he came to see what had happened and called for medical help. (ECF No. 7 at pp. 17–18.)

3

deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), a district court must review a prisoner complaint when the prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764

F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Causes of action under 42 U.S.C. § 1983 are subject to New Jersey's two-year statute of limitations for personal-injury claims. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citing *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011)). The date when such a cause of action accrues, however, is a matter of federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

## IV. DISCUSSION

In the opinion dismissing the original complaint upon screening, I found that because Mr. Torres alleged that his injury occurred on October 15, 2014, and this action must be deemed filed on August 25, 2017, at the earliest, his claims were barred by the applicable two-year statute of limitations. (*See* Op., ECF No. 3, at 4.) Nonetheless, I gave Mr. Torres the opportunity to file an

amended complaint including any justification for considering the limitations period to have been suspended or tolled.[3] (*Id.* at 5–6.) Mr. Torres's amended complaint contains no justification for considering the limitations period to have been suspended or tolled, nor does it include any other argument in support of a finding that claims concerning his injury on October 15, 2014, should not be barred as untimely.[4] (*See* ECF No. 7.)

As in the prior screening opinion, it is apparent from the face of the complaint that Mr. Torres's claims concerning injuries suffered on October 15, 2014, are barred by the two-year statute of limitations and must be dismissed.[5] *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013); *Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007). While District Courts generally should permit curative amendments, a complaint may be dismissed

---

[3] Statutory tolling must be based on one of the specifically enumerated grounds. *See, e.g.*, N.J. Stat. Ann. § 2A:14-21 (minority or insanity); N.J. Stat. Ann. § 2A:14-22 (non-residency of persons liable). Equitable tolling may arise

> where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.

*Cason v. Arie Street Police Dep't*, Civ. No. 10–497 (KSH), 2010 WL 2674399, at *5 n.4 (D.N.J. June 29, 2010) (quoting *Freeman v. State*, 788 A.2d 867, 879–80 (N.J. Super. Ct. App. Div. 2002)).

[4] I further note that, while Mr. Torres has now provided substantially more detail than he did in his original complaint, his allegations are still defective. When asserting a § 1983 claim, liability may not rest upon the doctrine of *respondeat superior*—instead the plaintiff must show personal involvement by each defendant. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). When the defendant is a supervisor or a municipality, such involvement may take the form of the implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 175 (3d Cir. 2017); *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). While Mr. Torres alleges that defendants County of Essex, Essex Co. Freeholders, Ortiz, and Hendricks were generally responsible for the safety of inmates at the Essex County Correctional Facility, he has not alleged that any action, including any policy or custom implemented by these defendants, produced circumstances that led to his injury. (*See* ECF No. 7.)

[5] Even if Mr. Torres's claims were construed as asserting tort liability, rather than liability under § 1983, they would still be subject to New Jersey's two-year statute of limitations for personal-injury actions. *See* N.J. Stat. Ann. 2A:14-2; *Polidoro v. Saluti*, 675 F. App'x 189, 192 n.7 (3d Cir. 2017).

with prejudice if permitting further amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002); *see also Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Mr. Torres, given an opportunity to address the statute of limitations issues, has failed to do so. Nor is there any apparent basis for tolling or delayed accrual of the claims for injuries received on October 15, 2014. (*See* legal discussion in earlier opinion, ECF no. 3 at 4–6.)The existence of a cause of action based on the assault or resulting injury was surely immediately apparent to Mr. Torres on or around that date. It appears that further amendment of these claims would be futile. Accordingly, the claims concerning injuries occurring on or around October 15, 2014 will be dismissed with prejudice as untimely.

That does not conclude the screening of the amended complaint, however, because it asserts new claims that defendants were deliberately indifferent to Mr. Torres's medical or dental needs. (*See* ECF No. 7 ¶ 6.) I construe these allegations as concerning, at least in part, treatment (or a lack thereof) in the period *following* the initial injury.[6] Given the lack of any precise dates, it cannot be determined from the face of the complaint whether these deliberate-indifference claims are barred by the statute of limitations.

An incarcerated plaintiff asserting a § 1983 claim for inadequate medical care under the Eighth Amendment must show the existence of a serious medical need and that facility staff

---

[6] Mr. Torres does not, in any case, seem to complain of the medical treatment he received in the immediate wake of his injury. In a declaration attached to the amended complaint, Mr. Torres explains that when defendant Officer Piontek noticed the incident "he came running into see what had happened" and then "called main medical to have a nurse come to see me right away." (ECF No. 7 at ECF p. 18.) Mr. Torres recounts that non-party Nurse Westly "came as soon as she could" and "filled out the urgent/emergent slip so I could be taken to main medical." (*Id.*) He states that main medical staff "tr[ied] to stop the bleeding the best that they could" and then sent him to UMDNJ hospital. (*Id.* at ECF p. 19.) At the hospital, Mr. Torres explains that he was examined by three dentists and that the damaged teeth were then extracted. (*Id.* at ECF p. 18.)

7

demonstrated deliberate indifference to that medical need. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017); *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). The Court of Appeals for the Third Circuit has stated that "a medical need is 'serious' for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern*, 657 F. App'x at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

A finding of deliberate indifference requires demonstrating that the defendant had the requisite state of mind, i.e., knowledge of a serious medical risk and disregard for that risk. *See Parkell v. Danberg*, 833 F.3d 313, 335, 337 (3d Cir. 2016); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding that an Eighth Amendment violation requires a showing of "obduracy and wantonness"); *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (equating deliberate indifference with at least "reckless[] disregard [for] a substantial risk of serious harm."). The Third Circuit has identified a variety of forms that deliberate indifference may commonly take, including: "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell*, 833 F.3d at 337 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Natale*, 318 F.3d at 582. A mere "inadvertent failure to provide adequate medical care"—i.e., negligent diagnosis or treatment—will not create an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Parkell*, 833 F.3d at 337

Applying these standards, Mr. Torres's deliberate indifference claims are subject to dismissal upon screening, as they include no supporting factual allegations. (*See* ECF No. 7.) The entirety of Mr. Torres's deliberate indifference allegations against the Essex County Jail Medical Department and the Doe defendants reads,

> These defendants failed to properly treat Plaintiff's injuries, as well as provide follow up care. As of the date of this complaint Plaintiff still suffers the loss of his teeth and his other teeth are becoming loose as the result of no support around his missing teeth. The failure to make Plaintiff whole again shows nothing less than Deliberate Indifference towards Plaintiffs medical/dental needs. Their actions violate Plaintiffs Eighth and Fourteenth Const. Amend. Rights.

(*Id.* ¶ 6.) Similarly, the full extent of the allegations against defendants New Jersey Claim Services and Inservco Insurance Services is,

> These defendants are the insurers for the Essex County Jail. As such they were responsible for processing Plaintiffs tort injury. To the best of Plaintiffs knowledge defendants failed to follow up on his claim after he was transferred to state prison. These defendants actions violated Plaintiffs Fourteenth and Eighth Amend. Rights with respect to Deliberate Indifference, and his medical/dental needs.

(*Id.*)

These portions of the amended complaint do not adequately allege factually that any defendant was deliberately indifferent to Mr. Torres's ongoing medical problems. Mr. Torres does not claim that any defendant had knowledge of any medical need or that any defendant refused, delayed, or prevented treatment. *See Parkell*, 833 F.3d at 337. The omission of any factual allegation that could support even an inference of knowing disregard is fatal to these deliberate-indifference claims.

Additionally, while Mr. Torres labels his claim against the insurance defendants as being for deliberate indifference of medical needs, his grievance with them in fact appears to be their

9

alleged failure to process his claim. (*See* ECF No. 7 ¶ 6.) Furthermore, Mr. Torres has not indicated any basis for holding a private insurance company liable, under § 1983 or otherwise. Indeed, the Supreme Court has indicated that insurance companies, even when processing claims under state statutory regimes, are not considered state actors or to be acting under color of state law, and thus may not be sued under § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50–58 (1999) ("Thus, the issue we address, in accordance with our cases, is whether a *private insurer's* decision to withhold payment for disputed medical treatment may be fairly attributable to the State so as to subject insurers to the constraints of the Fourteenth Amendment. Our answer to that question is 'no.'").

For all these reasons, the amended complaint fails to state the essentials of a § 1983 deliberate-indifference claim. That claim will be dismissed for failure to state a claim upon which relief can be granted.

The amended complaint represents Mr. Torres's first attempt to state a deliberate-indifference claim, and he is appearing *pro se*. It is possible that Mr. Torres may be able to re-plead with facts sufficient to state a deliberate-indifference claim under *Iqbal* and *Twombly*. Thus, the deliberate-indifference claim is dismissed without prejudice to the filing of a second amended complaint that includes factual allegations sufficient to state a timely deliberate-indifference claim. Any such amended complaint should be filed within 45 days after the entry of this Opinion and accompanying Order.

Finally, I note an additional flaw in the amended complaint: It does not state any claim against defendants Howel and Piontek, who are not mentioned outside of the caption.[7] Accordingly, any claims against Howel and Piontek are also dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, Mr. Torres's claims arising directly from the occurrences on and around October 15, 2014 will be dismissed with prejudice as untimely. The remainder of the amended complaint, consisting of the deliberate-indifference claims, is also dismissed, but without prejudice to the submission of a second amended complaint within 45 days.

DATED: November 2, 2018

KEVIN MCNULTY
United States District Judge

---

[7] As noted above, Howel and Piontek are mentioned in exhibits to the amended complaint, but even considering these references to be incorporated into the pleading, no claim is stated. Indeed, Howel's and Piontek's alleged actions appear entirely innocuous. *See, supra*, note 2.

11